847 F.2d 104
 Jose Luis PEREZ, Jr., Lynn Belton, Jean Briley, Jose Luis
Perez, Sr., Alda Shalout, and Joseph Felix on
behalf of themselves and all others
similarly situated,
v.
GOVERNMENT OF THE VIRGIN ISLANDS.
Appeal of Jose Luis PEREZ, Jr., Jean Briley, Alda Shalout,
on behalf of themselves and all others similarly situated.
 No. 87-3397.
 United States Court of Appeals,
Third Circuit.
 Argued April 19, 1988.
Decided May 25, 1988.
 
 Russell B. Johnson (argued), Christiansted, St. Croix, V.I., for appellant.
 Norman P. Jones, Michael W.L. McCrory (argued), Asst. Attys. Gen., Dept. of Law, Government of the Virgin Islands, Christiansted, St. Croix, V.I., for appellee.
 Before SEITZ, SLOVITER, and BECKER, Circuit Judges.
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 I.
 
 1
 Appellant Jose Luis Perez, who purchased an automobile liability insurance policy from the now-defunct Dome Insurance Company, Inc., was one of the plaintiffs who sought to represent a class of similarly-situated policy holders in a suit against the Government of the Virgin Islands. The essence of the claim pressed by Perez was that the Government was negligent in allowing Dome to operate in the Virgin Islands and in failing to enforce the insurance statutes and regulations as to Dome.[1] It is alleged that as a result of the Government's negligence, the policies became worthless.[2] The district court permitted Perez' action to proceed as a test case rather than as a class action.[3] Each party moved for summary judgment. Although the second amended complaint sought "general, compensatory and special damages as may be proven," App. at 173, in his motion for summary judgment Perez sought $528, the value of the premiums he paid to Dome.
 
 
 2
 The district court granted the Government's motion for summary judgment. After reviewing the statutory scheme, the court held that Perez could not establish a duty running to him by virtue of the Virgin Islands insurance laws, and thus he could not succeed on his negligence action. Perez appeals, contending that the district court erred as a matter of law. Our review is plenary.
 
 II.
 
 3
 Perez argues that the Government of the Virgin Islands was a responsible sovereignty and should be held responsible for non-regulation of the only domestic insurer in the Territory. Before a sovereign may be sued for negligence, it must first be ascertained if the sovereign has waived its inherent immunity to suit. The Government of the Virgin Islands has waived such immunity. See V.I.Code Ann. tit. 33, Sec. 3408 (Supp.1986).
 
 
 4
 However, a waiver of immunity by a sovereign does not automatically create a new liability. Instead, the waiver simply removes one defense which the sovereign may plead against a negligence claim. See, e.g., Cracraft v. City of Saint Louis Park, 279 N.W.2d 801, 808 (Minn.1979). There still must be a basis to assert liability under either statutory or common law. This appeal hinges on that issue.
 
 
 5
 The district court in this case stated that when a plaintiff sues the government for breach of a duty which is not explicitly created by statute, "the public duty/special duty distinction is a 'basic tenet of negligence law.' " Perez v. Gov't of the Virgin Islands, No. 84-273, slip op. at 6 (D.V.I. April 30, 1987) (quoting Cracraft, 279 N.W.2d at 804). Under that general rule, which is still adhered to by a majority of jurisdictions, see Annot., 38 A.L.R. 4th 1194 (1985), a duty owed by the governmental entity to the public in general cannot be the basis of a negligence action, although a duty owed to individual members of the public based on a special relationship can be the basis of such an action. See Trianon Park Condominium Ass'n v. City of Hialeah, 468 So.2d 912 (Fla.1985) (absent specific legislative intent to the contrary, government's enactment of building code provisions and enforcement thereof did not create duty to individual property owners); Cracraft, 279 N.W.2d at 806 (by enacting an ordinance requiring fire code inspections or by undertaking those inspections city undertook a duty only toward the general public and not to individual members of that public, absent "additional indicia that the municipality has undertaken the responsibility of ... protecting a particular class of persons from the risks associated with fire code violations").
 
 
 6
 The Virgin Islands legislature has adopted as "the rules of decision in the courts of the Virgin Islands" the common law as expressed in the American Law Institute's Restatements or, if not expressed in the Restatements, "as generally understood and applied in the United States ... in the absence of [Virgin Islands] laws to the contrary." V.I.Code Ann. tit. 1, Sec. 4 (1967); see Co-Build Companies v. Virgin Islands Refinery Corp., 15 V.I. 528, 533, 570 F.2d 492, 494 (3d Cir.1978); Skeoch v. Ottley, 6 V.I. 241, 252, 377 F.2d 804, 810 (3d Cir.1967).
 
 
 7
 The Restatement (Second) of Torts treats the issue of governmental tort liability in the sections relating to Standard of Conduct. Section 288 reflects the prevailing rule in the United States that "a legislative enactment ... whose purpose is found to be exclusively ... (b) to secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public " does not create a standard of conduct to be used to impose tort liability. Restatement (Second) of Torts Sec. 288 (1965) (emphasis added). The Comment on this clause amplifies further as follows:
 
 
 8
 [Certain] legislative enactments and regulations are intended only for the purpose of securing to individuals the enjoyment of rights and privileges to which they are entitled as members of the public, rather than for the purpose of protecting any individual from harm. Thus a statute may be intended only to secure the public right of unobstructed passage on the public highway, or freedom from excessive noise or immoral conduct in the community. Under some circumstances, where an individual has been interfered with in his exercise of such a public right, and as a result has suffered special harm, distinct from that suffered by the rest of the community, he may be entitled to maintain a tort action for the violation.... In the ordinary case, however, harm suffered by such an individual is not within the purpose of the provision, and the statute or regulation will not be taken to lay down a standard of conduct with respect to such harm.
 
 
 9
 Restatement (Second) of Torts Sec. 288 comment on clause (b) (1965).
 
 
 10
 There has been growing criticism of the public-duty/private-duty distinction. Some courts have held that this distinction was a form of sovereign immunity which had been abrogated by the state legislature. See, e.g., Adams v. State, 555 P.2d 235, 241 (Alaska 1976); Wilson v. Nepstad, 282 N.W.2d 664, 668 (Iowa 1979); see also Trianon Park, 468 So.2d at 923-28 (Ehrlich, J., and Shaw, J., separately dissenting); Cracraft, 279 N.W.2d at 808-12 (Kelly, J., dissenting).
 
 
 11
 It is sometimes difficult to adapt the public duty doctrine to the situation where a government inspector fails to discover dangerous conditions or code violations, and those conditions are the cause of an individual's subsequent injury. Compare Hoffert v. Owatonna Inn Towne Motel, Inc., 293 Minn. 220, 199 N.W.2d 158 (1972) (individual injured by negligent performance of a building inspector does not have a cause of action) with Campbell v. City of Bellevue, 85 Wash.2d 1, 530 P.2d 234 (1975) (claim may be maintained based on city electrical inspector's failure to disconnect nonconforming lighting system known to be hazardous).
 
 
 12
 In a recent Virgin Islands case the Territorial Court of the Virgin Islands sustained a negligence action against the Government by the owners of a house that was damaged because it did not rest on solid ground; the government inspector had approved the final inspection report after visiting the premises without looking for structural defects. Swanston v. Government of the Virgin Islands, 17 V.I. 158 (Terr.Ct.1980). The court held that although the government inspector did not have actual knowledge of the dangerous condition, he did more than the inspector in Hoffert, 199 N.W.2d at 159, who merely failed to perceive a violation. Swanston, 17 V.I. at 166. The court also construed the Virgin Islands Building Code to reflect the legislature's clear intent that the Government's duty encompassed the risk of property damage claimed in that case. Id. at 167. Therefore, the court concluded that "the public duty doctrine should not be applied in this case to prevent the Swanstons from recovering." Id. at 166.
 
 
 13
 We have no occasion in this case to discuss the merits of the Territorial Court's holding in Swanston. For our purposes it is significant that the court assumed the continued viability of the public duty doctrine. We conclude that the public duty doctrine precluding suit for governmental negligence based only on the Government's failure to comply with a duty owed to the public in general, expressed in the Restatement and generally applied in the United States, remains the rule of decision in the Virgin Islands.
 
 
 14
 Perez states that "he can live with the majority rule" on the public duty doctrine but that it is inapplicable here because the statutory scheme of the Virgin Islands establishes a special relationship between the Government and its citizens who need to drive an automobile. Appellant's Brief at 15. The fact that drivers must carry liability insurance and that insurers must be approved by the Insurance Commissioner before they can do business in the Virgin Islands does not establish a special relationship by which the Government undertakes the duty to protect policyholders from the insurer's fiscal irresponsibility or defalcations.
 
 
 15
 Perez has pointed us to no case which imposed a duty on a government under a statutory scheme analogous to that here. In Bell v. Perrino, 112 A.D.2d 124, 490 N.Y.S.2d 821, 823 (App.Div.1985), aff'd, 67 N.Y.2d 751, 490 N.E.2d 1227, 500 N.Y.S.2d 101 (1986), the court held that a plaintiff who was shot by an unlicensed cab driver could not maintain a suit against the defendant city for failure to enforce the licensing ordinance, stating, "[o]rdinances such as those ... requiring the licensing of the taxicab industry[ ] are enacted for the benefit of the general public," and therefore cannot form the basis for liability of the city.
 
 
 16
 Similarly, in this case the district court held that the Virgin Islands Insurance Code could not be read as imposing a duty on the Government to guarantee the integrity of any particular insurance company, and it emphasized that the duties imposed upon the Insurance Commissioner, such as "whether or not to conduct investigations or to invoke his or her enforcement authority," Perez, No. 84-273, slip op. at 7 (citing V.I.Code Ann. tit. 22, Sec. 53(c) (1970)), were primarily discretionary. Patently, the amount of resources that a government decides to put into a particular area of enforcement, as opposed to other areas of enforcement, cannot be viewed as a mandated duty that forms the basis of a negligence action.
 
 
 17
 If there is any duty upon which a negligence action can be based in this case, it must be found in the statutory provisions governing regulation of the insurance industry. However, we agree with the district court that under those provisions, the Commissioner's duties to regulate the industry under the insurance laws are largely discretionary. For example, the Commissioner only needs to examine and investigate the affairs and records of territorial insurers "as often as he deems advisable." V.I.Code Ann. tit. 22, Sec. 101(a) (1970); see also id. Sec. 53(c)(2) ("Commissioner may ... conduct investigations to determine whether any person has violated any provision of this title"). Once an insurer is given permission to operate in the Territory, the Commissioner is under no statutory duty to audit the records and practices of the company.
 
 
 18
 In contrast, most of the mandatory duties imposed on the Commissioner deal with ministerial matters. See, e.g., id. Sec. 60 (Commissioner's annual report to Governor and Legislature is mandatory). Arguably, the Commissioner had an obligation under the law to suspend or revoke Dome's certificate of authority for failure to file annual statements. See id. Sec. 222(d). However, we cannot read into that requirement a general undertaking to assume liability for any injury indirectly caused by financial manipulation of which an annual statement might have given some notice.
 
 
 19
 We note also that the Virgin Islands Insurance Code specifically gives the insurer, the insured, and their representatives "the duty of preserving inviolate the integrity of insurance." Id. Sec. 2. The legislature could easily have included the Government in this list, but failed to impose that duty on it.
 
 
 20
 In effect, the Government's position vis-a-vis the insurer is comparable to that of a division of motor vehicles which issues a driver's license. See Cracraft, 279 N.W.2d at 805. The Government represents only that it has properly tested the driver, not that the driver is skillful and accident proof. Therefore, we conclude that the district court did not err in holding that the Government of the Virgin Islands owed no duty to individual insureds such as the plaintiff here.
 
 
 21
 We are not unsympathetic to the plight of citizens who found themselves without insurance because of the Dome situation, but if the Legislature of the Virgin Islands intends to impose a higher duty and consequential liability on the Government of the Virgin Islands, it must do so explicitly. We fail to find such a duty from the existent statutory scheme.
 
 III.
 
 22
 For the foregoing reasons, the judgment of the district court will be affirmed.
 
 
 
 [1]
 Specifically, the appellants allege that the Insurance Commissioner's office was so understaffed, due to its low budget, that it could not properly execute its duties under the Virgin Islands Insurance Code. Because of our conclusion regarding the duty issue in this case, we have no reason to elaborate any further upon the negligence aspects of this allegation
 
 
 [2]
 Dome was forced into insolvency after insiders of the company fraudulently transferred its assets to themselves for personal use. For a detailed description of the fraud see Brady v. Dome Insurance Co., 21 V.I. 363, 365-66 (D.V.I.1985)
 
 
 [3]
 The court held that the subclasses of insureds against whom claims were made and of persons with claims against insureds could not be maintained, and reserved ruling on the class of insureds, represented by Perez, whose policy was paid for but cancelled until the Government's liability was determined in the test case. Perez v. Gov't of the Virgin Islands, 109 F.R.D. 384 (D.V.I.1986)