**SANTOS DEJESUS, Plaintiff**

**v.**

**VIRGIN ISLANDS WATER AND POWER AUTHORITY and THE GOVERNMENT OF VIRGIN ISLANDS, Defendants.**

Case No. ST-10-CV-205

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

October 26, 2011

404

CLIVE RIVERS, ESQ., Law Offices of Clive Rivers, St. Thomas, USVI, *Attorney for Plaintiff.*

SIMONE R.D. FRANCIS, ESQ., Ogletree, Deakins, Nash, Smoak & Stewart, LLC, St. Thomas, USVI, *Attorney for Defendant WAPA.*

DUNSTON, *Judge*

## MEMORANDUM OPINION

(October 26, 2011)

Pending before the Court is the Virgin Islands Water and Power Authority's ("WAPA") motion for summary judgment on Counts I, III, and IV of Plaintiff's Complaint.[1] For the following reasons, WAPA's motion will be granted in part and denied in part.

## FACTUAL AND PROCEDURAL HISTORY

On December 22, 2009, Plaintiff was working as a member of a landscaping crew in the "de Jongh Gut," a sloped area located in the Savan community of St. Thomas and owned by the Government of the Virgin Islands.[2] A WAPA utility pole and a guy wire[3] were located in the Gut.[4] While working in the Gut, Plaintiff came in contact with the guy wire,[5] causing the guy wire to move and to come in contact with a fuse cutout box, which energized the guy wire and electrocuted Plaintiff. On

---

[1] WAPA filed its motion on July 1, 2011; Plaintiff filed an opposition on August 8, 2011; and WAPA filed a reply on August 26, 2011.

[2] WAPA's motion for summary judgment, Exhibit 7, page 12.

[3] A guy wire is "a cable, wire, or rope that is used to brace something," in this case a utility pole. Webster's Online Dictionary. Generally, guy wires are attached to the utility pole and anchored to the ground. In this case, there is evidence that the guy wire's anchor had rotted off and that the guy wire was hanging loosely. Brenda Kennings deposition, at pages 13, 15, and 16.

[4] See photos attached to the Government's March 3, 2011, response WAPA's second request for production of documents.

[5] There is some evidence that Plaintiff had used the guy wire to brace himself as he worked in the Gut. Shawn Brown deposition, at page 4.

April 8, 2011, Plaintiff filed a Complaint alleging negligence, gross negligence, and strict liability against WAPA and the Government of the Virgin Islands.

## STANDARD

Rule 56 of the Federal Rules of Civil Procedure, made applicable to the Virgin Islands Superior Court through Rule 7 of the Rules of the Superior Court, provides that summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In considering a motion for summary judgment, a court must "draw . . . all reasonable inferences from the underlying facts in the light most favorable to the non-moving party." *Battaglia v. McKendry*, 233 F.3d 720, 722 (3d Cir. 2000). An issue is "genuine" if a reasonable jury could possibly hold in the nonmovant's favor with regard to that issue. *Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## ANALYSIS

### a) Count III: strict liability

██ Plaintiff asserts that the Government and/or WAPA had engaged in an abnormally dangerous activity making them strictly liable for Plaintiff's injuries. Pursuant to RESTATEMENT (SECOND) OF TORTS § 519, a person who:

> carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.

A court considers the following factors when determining whether an activity is abnormally dangerous:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others; (b) likelihood that the harm that results from it will be great; (c) inability to eliminate the risk by the exercise of reasonable care; (d) extent to which the activity is not a matter of common usage; (e) inappropriateness of the activity to the place where it is carried on; and (f) extent to which its value to the community is outweighed by its dangerous attributes.

RESTATEMENT (SECOND) OF TORTS § 520. The factors are "all of impor-
tance . . . and ordinarily several of them will be required for strict liability."
*Id.*, at comment f. The court, not the jury, determines whether an activity is
abnormally dangerous. *Id.*, at reporter's note.

■ Many jurisdictions have determined that maintaining high tension
power lines is not considered abnormally dangerous or an ultra-hazardous
activity. *See Smithbower v. Southwest Cent. Rural Elec. Co-op., Inc.*, 374
Pa. Super. 46, 542 A.2d 140, 142 (1988) ("[c]learly, most of the courts
rejected the imposition of absolute liability against an electric company");
*Kent v. Gulf States Utilities Co.*, 418 So.2d 493, 498-499 (La. 1982)
("transmission of electricity over isolated high tension power lines is an
everyday occurrence in every parish in this state and can be done without
a high degree of risk of injury"); *Patterson v. Snohomish County Public
Utilities District No. 1*, 1999 Wash. App. LEXIS 2077, at *3 (Wash. Ct.
App. 1999) ("Washington courts do not regard the transmission of
electricity as an ultrahazardous activity subject to strict liability in tort");
*Fitzpatrick v. U.S. West, Inc.*, 246 Neb. 225, 518 N.W.2d 107, 115 (1994)
("[a]bsent negligence, we do not even hold power companies engaged in
the transmission of high voltage electricity liable for the harm caused
those who inadvertently come into contact with electrical lines");
*Williams v. Detroit Edison Co.*, 63 Mich. App. 559, 234 N.W.2d 702, 709
(1975) ("we choose to follow California's example and hold the power
company to the 'reasonable man' standard of care rather than impose
liability based upon the maintenance of an ultra-hazardous activity");
*Curtis v. Northeast Utilities*, No. CV 92-0511572-s, 1994 WL 702690, at
* 4 (Conn. Super. Ct. 1994) ("it strains credibility to hold a utility
company strictly liable unless negligence is involved. The generation or
transmission or supply of electricity touches all of us in our lives. We as
citizens have overwhelmingly concluded that strict regulation of our
public utilities is a necessary and prudent way to balance our insatiable
use of electricity"). The Court finds these jurisdictions persuasive. Power
lines are ubiquitous in the Virgin Islands and can exist without causing
harm if reasonable care is exercised. Accordingly, Plaintiff has raised no
genuine issue of material fact that would permit him to recover for his
injuries under RESTATEMENT (SECOND) OF TORTS § 520.

■ Plaintiff also contends that WAPA is strictly liable for his injuries
under RESTATEMENT (SECOND) OF TORTS § 402A, which is a rule that is
applicable to sellers of products. Section 402A states that:

one who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

A sale of electricity occurs "when the electricity leaves the transmission lines and passes through the customer's meter." *Frampton v. Pennsylvania Power and Light Co.*, 5 Pa. D. & C. 4th 285, 287-88 (Pa. Com. Pl. 1990). *See also Schriner v. Pennsylvania Power & Light Co.*, 348 Pa. Super. 177, 501 A.2d 1128 (1985) ("[W]hile still in the distribution system, electricity is a service, not a product; electricity only becomes a product, for purposes of strict liability, once it passes through the customer's meter and into the stream of commerce"). Plaintiff cannot succeed under section 402A because his injury occurred while the electricity was still in the distribution system prior to the point where the electricity passes through a customer's meter. Accordingly, WAPA's motion for summary judgment will be granted with respect to Count III of Plaintiff's Complaint based on the theory of strict liability.

**b) Count I: negligence and Count IV: gross negligence**

■■ In order to establish a claim for negligence, a plaintiff must prove:

(a) facts which give rise to a legal duty on the part of the defendant to conform to the standard of conduct established by law for the protection of the plaintiff, (b) failure of the defendant to conform to the standard of conduct, (c) that such failure is a legal cause of the harm suffered by the plaintiff, and (d) that the plaintiff has in fact suffered harm of a kind legally compensable by damages.

RESTATEMENT (SECOND) OF TORTS § 328A. In order to establish gross negligence, a plaintiff must demonstrate "an unreasonable risk of physical harm," a "risk [that] is substantially greater than that which is necessary to make [the] conduct negligent." *Booth v. Bowen*, Civil No. 2006-217, 2008 U.S. Dist. LEXIS 1678, at *8-9 (D.V.I. 2008) (citing RESTATEMENT (SECOND) OF TORTS § 500 (1965)).

■ Plaintiff asserts that WAPA has a duty to inspect and maintain its electrical lines, including its guy wires, and WAPA's failure to do so caused Plaintiff's injuries. WAPA contends that 30 V.I.C § 105(13) gives WAPA plenary power to control and supervise its facilities and precludes a factfinder from making its own determination about whether WAPA negligently maintained its facilities. 30 V.I.C § 105(13) states that WAPA has:

> complete control and supervision of facilities and properties constructed or acquired by it, including the power to determine the character of and necessity for all its expenditures and the manner in which they shall be incurred, allowed and paid, and such determinations shall be final and conclusive for all purposes.

In *Turbe v. Government of Virgin Islands*, the Third Circuit rejected WAPA's argument that 30 V.I.C § 105(13) prevents WAPA from ever being subject to tort liability for the negligent maintenance of its facilities. 938 F.2d 427, 430 (3d Cir. 1991). The Court stated that it "decline[d] to afford WAPA complete immunity for failure to repair its equipment" and that "in the absence of immunity, WAPA can be subjected to common law liability." *Turbe, supra*, at 429. Contrary to WAPA's argument, the Court finds that the Third Circuit did not commit an error in construing 30 V.I.C § 105(13). Section 105(13) merely recognizes WAPA's power to control its property, reiterating WAPA's status as an autonomous governmental instrumentality. The statute's language, specifying that all its maintenance "determinations shall be final and conclusive for all purposes," should not be read as affording WAPA immunity for its maintenance decisions. The Legislature of the Virgin Islands waived WAPA's claim to sovereign immunity applicable to the Government of the Virgin Islands. by endowing WAPA with the general power "to sue and be sued." *Cyprian v. Butcher*, 53 V.I. 224, 234 (V.I. Super. Ct. 2010). The defenses of qualified and absolute immunity are also inapplicable considering that these are personal defenses available to officials sued in their individual capacities. *Almonte v. City of Long Beach*, 478 F.3d 100, 106 (2d Cir. 2007). *See also Harlow v. Fitzgerald*, 457 U.S. 800, 807-808, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982).

■ Notwithstanding, WAPA contends that the public duty doctrine applies in the Virgin Islands, which precludes "suit for governmental negligence based on only the Government's failure to comply with a duty owed to the public in general." *Perez v. Government of the Virgin Islands*,

411

847 F.2d 104, 107 (3d Cir. 1988). In *Perez*, the Third Circuit found that the public duty doctrine was the law of the Virgin Islands in a situation where a "duty [arose] under legislative enactments or administrative regulations." *Turbe, supra*, at 430 (discussing *Perez, supra*). The public duty doctrine effectively immunizes the government and its officials from liability for a plaintiff's injuries except where a "special relationship" exists between the plaintiff and the government or official or where the official's acts are ministerial. *Ficek v. Morken*, 685 N.W.2d 98, 101-102 (N.D. 2004) (citing *South v. Maryland*, 59 U.S. 396, 403, 15 L. Ed. 433 (1855)).

■■■■ The public duty doctrine does not apply when a governmental entity is functioning in the same manner as a private entity. *See Worley v. Cleveland Pub. Power*, 77 Ohio App. 3d 51, 601 N.E.2d 80, 82 (1991) ("the public duty doctrine only applies to a municipalities' duty to enforce the laws . . . operating a utility is not a duty imposed by law. Once a municipality engages in certain activities, it is held liable, the same as private corporations and persons, for the negligence of employees and agents in the performance of the activities"); *see also L.A. Ray Realty v. Town Council of Town of Cumberland*, 698 A.2d 202, 208 (R.I. 1997) ("[t]he public-duty doctrine protects the state and its political subdivisions from tort liability arising out of the performance of governmental functions not commonly undertaken by private entities"). WAPA's operation of its facilities is not exclusively a public function. As a result, the public duty doctrine does not shield WAPA from liability in this case.

■■■■ In the absence of "local law to the contrary," the Restatements apply in the Virgin Islands. 1 V.I.C. § 4. Given that WAPA's utility poles, and the guy wires attached to them, are fixtures,[6] and that Plaintiff has alleged WAPA holds an easement on the land where Plaintiff was injured, Plaintiff's duty of care argument invokes premises liability theory. A possessor of land is subject to liability for physical injury caused to his or her invitees:

> by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize

---

[6] "Fixtures" are articles of personal property that have been "so annexed to the realty that [they are] regarded as part and parcel of the land." *Com. v. Foster*, 2011 PA Super 195, 33 A.3d 632, 637 (Pa. Super. Ct. 2011) (citing Black's Law Dictionary 574 (6th Ed.1991)).

that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.

RESTATEMENT (SECOND) OF TORTS § 343. A possessor of land is liable to licensees for injuries caused by:

a condition on the land if, but only if, (a) the possessor knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such licensees, and should expect that they will not discover or realize the danger, and (b) he fails to exercise reasonable care to make the condition safe, or to warn the licensees of the condition and the risk involved, and (c) the licensees do not know or have reason to know of the condition and the risk involved.

RESTATEMENT (SECOND) OF TORTS § 342. A person who enters unto land in the exercise of a privilege, "for either a public or private purpose, and irrespective of the possessor's consent," is considered a licensee. RESTATEMENT (SECOND) OF TORTS § 345(1). In addition, a possessor of land who:

maintains on the land an artificial condition which involves a risk of death or serious bodily harm to persons coming in contact with it, is subject to liability for bodily harm caused to trespassers by his failure to exercise reasonable care to warn them of the condition if (a) the possessor knows or has reason to know of their presence in dangerous proximity to the condition, and (b) the condition is of such a nature that he has reason to believe that the trespasser will not discover it or realize the risk involved.

RESTATEMENT (SECOND) OF TORTS § 337. *See also Dillon v. Twin State Gas & Electric*, 85 N.H. 449, 163 A. 111 (1932) (utility company with knowledge of frequent trespassers on its property violated its duty of care by failing to protect plaintiff from its wires). A possessor of land is defined as:

(a) a person who is in occupation of the land with intent to control it or (b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or (c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).

413

RESTATEMENT (SECOND) OF TORTS § 328E. Although an easement holder has a nonpossessory interest in land, "in matters involving possessor liability for injuries upon the land . . . an owner of an easement is generally considered a possessor of property and is required to maintain its easement." *Stanton v. Lackawanna Energy, Ltd.*, 584 Pa. 550, 886 A.2d 667, 677 (2005); *see also Sutera v. Go Jokir, Inc.*, 86 F.3d 298, 304 (2d Cir. 1996) (owner of an easement may owe a duty to a party injured on the easement "stemming from the obligation to maintain and repair the easement"). Generally, a court determines the issue of whether a defendant owed a plaintiff a duty of care; however, a "matter may be referred to the jury" when "a question of law of law involves a ruling upon issues of fact." *Clint Aero, Inc., v. Ground Services, Inc.*, 754 F. Supp. 57, 25 V.I. 446, 451 (D.V.I. 1990).

 Although Plaintiff argues WAPA enjoyed an easement on the property where he was injured, Plaintiff has presented no documentary evidence supporting this contention. WAPA also has not provided any evidence concerning its property interest on the Government's land. Notwithstanding, WAPA's placement of its utility pole and guy wire on the Government's land suggests that WAPA does hold an easement on the property. Assuming, *arguendo,* that WAPA possessed, through an easement, an area that the Government's landscaping crews frequently work on to reduce vegetation growth, Plaintiff might be considered a licensee. It is undisputed that Plaintiff was a business visitor of the Government when he was on the Government's land because he was "invited to enter or remain on land for the purpose directly or indirectly connected with business dealings with the possessor of the land." RESTATEMENT (SECOND) OF TORTS § 335. On the other hand, there is no evidence that WAPA invited Plaintiff on the premises. In the instance where land is controlled by two entities simultaneously, a person may have dual status as an entrant. In the analogous situation where a parcel of land is leased, a person entering onto the property may be a business visitor or invitee of the lessor and a licensee of the lessee, or vice versa. See RESTATEMENT (SECOND) OF TORTS § 332, comment k. As either a licensee or invitee, the person would be considered to be lawfully present on the property. A person who is lawfully in proximity to the facilities of a supplier of electricity is owed the "highest degree of care practicable." *See Heller v. Consolidated Rail Corporation*, 576 F. Supp. 6, 11 (E.D. Pa. 1982) (suppliers of electricity are obligated to "exercise the 'highest degree of care practicable' in their operations to avoid injury to others . . .

this heightened duty of care extends only to those lawfully in proximity of the wires"). At the very least, a possessor of land has a duty to warn a licensee about known latent defects. *See Louis v. Caneel Bay, Inc.*, 50 V.I. 7, 13 (V.I. Super. Ct. 2008).

WAPA, of course, denies that it possesses any land on the Government's property in the Gut. At the very least, however, WAPA possesses and controls the land under the utility pole. Even if the Court were to find that Plaintiff became a trespasser when he came in contact with the guy wire, there is evidence of frequent landscaping activity around the utility pole that would classify Plaintiff as a known or foreseeable trespasser. The Government of the Virgin Islands had a practice of hiring a landscaping crew to clear vegetation in the Gut approximately two to three times a year. (Lionel Olive deposition, at page 3). In addition, the Government has been clearing the Gut for nine to ten years. (Shawn Brown deposition, at page 3). Although WAPA had not received notice that a landscaping crew would be doing work in the Gut on the day of the incident, the Government's practice of clearing the Gut over a ten year period gave WAPA at least constructive knowledge that people were working in close proximity to WAPA's facilities on a regular basis.

In this situation, the Court finds the illustration in Restatement (Second) of Torts § 335 to be instructive, even though the section is concerned with constant trespassers as opposed to frequent trespassers. There, a property owner:

> knowing that persons are in the habit of trespassing upon his land at a point close to his unfenced powerhouse, permits a high voltage electric wire, strung at a height of five feet and so concealed by vegetation as to be difficult to observation, . . . to become uninsulated. [When plaintiff], a trespasser, wanders from the adjacent part of the land into the yard of the powerhouse and comes in contact with the wire, [and dies, the owner] is subject to liability for [plaintiff's] death.

*Id.*, comment d. Both the landowner in the Restatement's illustration and WAPA had a duty to warn individuals on their premises, given "the chance that, unless warned, [a plaintiff] will come in contact with [the wire] and the gravity of the harm which [the plaintiff] will sustain if [he or she] does so." *Id.*, comment e. Just as low strung, uninsulated, electrical wires, concealed

415

by vegetation, present a latent hazard to trespassers, a guy wire that may become energized is a latent defect. Because guy wires are used to support a utility pole and generally are not energized, a person has no reason to expect that coming in contact with a guy wire could result in electrocution. In addition, the Government and its agents have a right to clear vegetation on the Government property that grows up around WAPA's facilities. As a result, WAPA, at the very least, would owe Plaintiff the same duty of care that is owed by a possessor of land, having artificial conditions on his or her land that are highly dangerous, to "constant trespassers on limited area." *Id*.

██ ██ Assuming, *arguendo*, that while clearing the Gut, the Government landscaping crews only infrequently came into contact with WAPA's facilities, WAPA might not owe Plaintiff a duty of care, at least under the Restatement. See RESTATEMENT (SECOND) OF TORTS § 333 (generally, "a possessor of land is not liable to trespassers for physical harm caused by his failure to exercise reasonable care"). Nevertheless, the Third Circuit has determined that "suppliers of electricity owe a duty of care to *all* people in proximity to the wires through which high-voltage electricity flows." (emphasis added). *Zimmerman v. Southeastern Pennsylvania Transportation Authority*, 168 F.3d 680, 685 (3d Cir. 1999).

██ Accordingly, there are genuine issues of material fact as to (1) whether WAPA possessed the land surrounding the guy wire, *see Leichter v. Eastern Realty Company*, 358 Pa. Super. 189, 516 A.2d 1247, 1249 (1986) ("whether a party is a 'possessor' of land is a determination to be made by the trier of fact"), (2) whether the landscaping crews frequently cleared vegetation on realty that WAPA possesses, and (3) the extent of WAPA's knowledge of the activities of the landscaping crew. As a result, WAPA is not entitled to judgment as a matter of law with respect to the issue of duty.[7]

---

[7] Plaintiff cites *Schultz v. Consumers Power Company*, 443 Mich. 445, 506 N.W.2d 175, 179 (1993) for the proposition that a utility company also owes a general duty to the public to maintain its equipment in a reasonably safe condition. In contrast, the Third Circuit, when evaluating RESTATEMENT (SECOND) OF TORTS §§ 323 and 324A, stated that a failure to repair must rise to the level that would "launch a force or instrument of harm," *see Turbe, supra*, at page 433, which the Court described as a "sin of commission rather than omission." *Id.*, at 432. Here, WAPA's failure to maintain the guy wire appears to be a "sin of omission." The Court will not speculate on whether the Third Circuit would create an exception to Restatement (Second) of Torts §§ 323 and 324A and find that a utility company owes a general duty to the public to maintain its equipment. But *see Zimmerman, supra*, at 685.

In addition to establishing a duty of care, Plaintiff must also demonstrate breach of duty. Generally, "a plaintiff must prove that the owner had actual or constructive notice of the dangerous condition . . . [f]ailure to offer evidence from which the fact finder could conclude that the owner had notice of the dangerous condition is fatal to the plaintiff's claim." *Canton v. Kmart Corp.*, No. 5-143, 2010 U.S. Dist. LEXIS 12646, at *5-6 (D.V.I. 2010). Plaintiff provides evidence that WAPA was notified that the guy wire was loose. (Brenda Kennings deposition, at page 13). The guy wire in question was attached to the top of a utility pole. (See photos attached to the Government's March 3, 2011, response WAPA's second request for production of documents). Under these circumstances, a loose guy wire could pose a dangerous circumstance. A loose guy wire could fall from its position at the top of the utility pole, come in contact with the electrical lines below, and become an energized wire sending a dangerous current from the high tension power lines above to the ground below. A live wire on the ground is an obvious hazard. *See McGarity v. Hart Elec. Membership Corp.*, 307 Ga. App. 739, 706 S.E.2d 676, 682 (2011) (jury could find utility company had "a duty to conduct more frequent inspections to ensure that its live electrical wires were not left uncovered" and protruding from the ground). An energized guy wire connected to the ground is equally as dangerous. In *San Marcos Elec. Light & Power Co. v. Compton*, 48 Tex. Civ. App. 586, 107 S. W. 1151, 1154 (Tex. App. 1908), an electric company and telephone company were both liable for plaintiff's death when the telephone company had placed a guy wire on the top of a utility pole that "extended across the live wires strung thereon, and hung to within a few feet of the ground." The Court found the telephone company was liable for negligence for "attaching the guy wire and . . . allowing it to remain in a dangerous position" and the electric company was liable for not removing the wire. *Id. See also Pierce v. United Gas & Electric Co.*, 161 Cal. 176, 118 P. 700 (1911) (jury to determine whether it might have been anticipated that a loose guy wire could be brought in contact with a power line and cause injury); *Pillow v. Entergy Corp.*, 828 So. 2d 83, 88 (La. Ct. App. 2002) (power company liable for the death of a horse where loose, "swaying of the wires caused the lines to make contact and allowed electricity to escape into the guy line"). The *Pillow* court indicated that if "uninsulated high voltage lines pose a risk of harm, and if the utility [company] relies on insulation by isolation, it has a duty to make certain the lines remained isolated." Here,

417

as in *Pillow*, there is a genuine issue of material fact as to whether WAPA was negligent in permitting the uninsulated guy wire to come in contact with the fuse cutout box or in failing to warn Plaintiff about the condition. Accordingly, WAPA's motion for summary judgment on Plaintiff's negligence and gross negligence claims will be denied. An Order consistent with this Opinion shall follow.