**COMMONWEALTH of Pennsylvania, Appellant**

**v.**

**Aaron Robert FOSTER.**

Superior Court of Pennsylvania.

Argued Feb. 15, 2011.

Filed Sept. 1, 2011.

judges to engage in meaningful and objective evaluations of requests for judicial authorizations and for appellate courts to refrain from re-weighing their credibility determinations, as I believe the majority does here, in those apparently few cases where the authorization is denied.

4.  Respectfully, I believe the majority takes the trial court's comments in this regard out of context. *See* Majority Opinion, at 628. Specifically, with reference to the statement, "a minor, such as [Appellant], must attempt to secure the consent of at least one parent," the court was merely offering an alternate rationale based upon its interpretation of the United States Supreme Court's decision in *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992), it did not form the basis for its initial and primary holding. Rather, the court was just pointing out the fact the consent of one parent was not obtained in this case for whatever relevance an appellate court would attribute to that fact. *See* Trial Ct. *slip op.* at 19–21. I view the trial court's other comments as properly explaining why the minor's reasons for failing to involve her mother lacked credibility and, therefore, contributed to its finding of immaturity.

Pier N. Hess, Assistant District Attorney, Lebanon, for Commonwealth, appellant.

Brian L. Deiderick, Public Defender, Lebanon, for appellee.

BEFORE: FORD ELLIOTT, P.J.E., PANELLA AND FITZGERALD,* JJ.

OPINION BY FORD ELLIOTT, P.J.E.:

¶ 1 The instant action is an appeal from an order of court entered in the Court of Common Pleas of Lebanon County on May 17, 2010, at which time the trial court granted the renewed motion for judgment of acquittal of appellee, Aaron Robert Foster (hereinafter "appellee"), after his jury trial conviction. We affirm.

¶ 2 The facts and procedural history relevant to this matter follow. Appellee was arrested on October 11, 2009 and charged with attempted theft from a motor vehicle and theft from a motor vehicle in connection with an incident that occurred on that same date in Lebanon, Pennsylvania. On that date, at approximately 3:20 a.m., Officer Kevin G. Snavely ("Officer Snavely") observed appellee acting suspiciously at Curt's Automotive Service ("Curt's Auto") at 847 Cornwall Road. (Notes of testimony, 4/6/10 at 39.) Officer Snavely observed appellee lift the hood of a blue 1985 Volkswagen Golf and tamper with the interior. (*Id.*) The officer testified that the lighting conditions were excellent in the parking lot that morning, and there was nothing obstructing his view of appellee. (*Id.* at 41.) When appellee looked up to see Officer Snavely in the police cruiser, he immediately ran from the scene. Officer Snavely gave chase and radioed for assistance providing a description of the suspect. (*Id.* at 42.) Appellee was subsequently apprehended. (*Id.* at 43.)

¶ 3 Officer Snavely testified to his conversation with appellee following his apprehension. Appellee initially denied touching the vehicle in question and stated it would be his word against the officer's. However, when Officer Snavely indicated that he would send the grill for fingerprinting, appellee admitted to touching the grill of the Volkswagen. Appellee explained that he picked the grill up from the middle of the road and placed it along the Volkswagen so it would not be run over by another car. (*Id.* at 49, 50–51.)

¶ 4 James Garrett ("Garrett"), the owner of the Volkswagen, testified that he left his vehicle at Curt's Auto in perfect physical condition. (*Id.* at 6.) The outer grill of the vehicle was attached to the car, and the hood of the vehicle was closed when he left it there to be sold. (*Id.*) Garrett stated that he did not know appellee and never gave appellee permission to touch, tamper with, or alter his vehicle. (*Id.* at 7.)

* Retired Justice specially assigned to the Superior Court.

¶ 5 Curtis Meyerhoffer ("Meyerhoffer"), the owner of Curt's Auto, testified that on October 11, 2009, Garrett's Volkswagen was parked at his business to be sold. (*Id.* at 10.) When the vehicle was brought to his business, there was no physical damage noticeable. (*Id.* at 11.) Meyerhoffer received a telephone call from the Lebanon City Police Department informing him that a vehicle on his lot had been tampered with; upon arrival, he observed the front end of Garrett's vehicle was partially disassembled. (*Id.* at 11–12.) The vehicle's grill was removed and the battery charger's cord was cut. (*Id.* at 12.) It cost Meyerhoffer $166 in both labor and parts to return Garrett's vehicle to its original condition. (*Id.*) Meyerhoffer testified that he did not know appellee and never gave appellee permission to touch, tamper with, or alter Garrett's vehicle in any way.

¶ 6 A jury trial was scheduled to commence on April 5, 2010. After jury selection, but before the beginning of trial, the Commonwealth filed an amended information charging appellee with a single count of theft from a motor vehicle, 18 Pa.C.S.A. § 3934. A jury trial began on April 6, 2010. When the jury retired to deliberate, appellee's attorney made a motion for judgment of acquittal. The court ruled the motion was untimely but advised counsel it would entertain such a motion, if necessary, after the verdict was announced. The jury ultimately convicted appellee of theft from a motor vehicle, identifying the item of property as the "grill" and indicating that the value of the property was "$200.00." Appellee renewed the motion for judgment of acquittal under Pa.R.Crim.P. 606(A)(4). The parties were given an opportunity to file legal memoranda in support of their positions, and the court indicated it would take the matter under advisement. Thereafter, on May 17, 2010, the Honorable John C. Tylwalk

granted appellee's motion for judgment of acquittal.

¶ 7 On June 4, 2010, the Commonwealth filed a timely appeal to this court. On June 9, 2010, the trial court ordered the Commonwealth to file its concise statement of errors complained of on appeal. The Commonwealth filed the same on June 23, 2010; and on June 24, 2010, the trial court filed its 1925(a) opinion, which essentially relied on its May 17, 2010 opinion granting the motion for judgment of acquittal.

¶ 8 In its brief, the Commonwealth raises the following issues for our review:

A. WHETHER THE TRIAL COURT ERRED WHEN IT GRANTED [APPELLEE'S] ORAL POST–VERDICT MOTION FOR JUDGMENT OF ACQUITTAL?

B. WHETHER THE TRIAL COURT POSSESSED THE AUTHORITY TO, *SUA SPONTE,* RAISE AND ADDRESS WHEN THE COMMONWEALTH MAY AMEND ITS CRIMINAL CHARGING DOCUMENT DURING TRIAL, AS SAID THE ISSUE [SIC] DID NOT ARISE DURING [APPELLEE'S] TRIAL[?]

C. WHETHER THE COMMONWEALTH MAY AMEND ITS CRIMINAL CHARGING DOCUMENT DURING TRIAL, BUT AFTER THE CLOSE OF THE COMMONWEALTH'S CASE–IN–CHIEF, IF THE DEFENSE MOTIONS FOR A JUDGMENT OF ACQUITTAL?

Commonwealth's brief at 4.

¶ 9 Our standard of review when considering the Commonwealth's claim that the trial court erred in granting appellee's motion for judgment of acquittal is as follows.

A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge. *Commonwealth v. Hutchinson*, 947 A.2d 800, 805–806 (Pa.Super.2008), *appeal denied*, 602 Pa. 663, 980 A.2d 606 (2009), quoting *Commonwealth v. Andrulewicz*, 911 A.2d 162, 165 (Pa.Super.2006).

■ ¶ 10 Theft from a motor vehicle occurs when one "unlawfully takes or attempts to take possession of, carries away or exercises unlawful control over any movable property of another from a motor vehicle with the intent to deprive him thereof." 18 Pa.C.S.A. § 3934.[1] Specifically, in making the motion for judgment of acquittal, appellee claimed the Commonwealth did not establish that "moveable property" was taken "from a motor vehicle." Appellee essentially argued that the grill of the vehicle did not meet the definition of "moveable property" nor was the grill located within the motor vehicle. As the jury specifically found appellee guilty of the removal or attempted removal of the grill of the vehicle, an item attached to the outside of the vehicle, appellee claimed that the evidence was insufficient. The trial court agreed and granted the motion.

¶ 11 Thus, the present controversy centers on the phrases "moveable property" and "from a motor vehicle." This opinion is the first to consider the interpretation of this language since the statute was adopted December 21, 1998 and effective 60 days thereafter.[2]

■ ¶ 12 In a case involving a question of statutory interpretation, we are subject to the rules of statutory construction enacted by the legislature and embodied in 1 Pa.C.S.A. § 1901 *et seq.*

> The Statutory Construction Act provides the object of our interpretation and construction of statutes is to ascertain and effectuate the intention of the legislature. The General Assembly's intent is best expressed through the plain language of the statute. When the words of a statute are clear and unambiguous, there is no need to look beyond the plain meaning of the statute under the pretext of pursuing its spirit. Therefore, only when the words of a statute are ambiguous should a court seek to ascertain the intent of the General Assembly through consideration of statutory construction factors found in [1 Pa.C.S.A.] Section 1921(c).

*Commonwealth v. Brown*, 603 Pa. 31, 981 A.2d 893, 897–898 (2009) (citations omitted).

> When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:
>
> (1) The occasion and necessity for the statute.
>
> (2) The circumstances under which it was enacted.
>
> (3) The mischief to be remedied.
>
> (4) The object to be attained.
>
> (5) The former law, if any, including other statutes upon the same or similar subjects.

1. The standard for criminal attempt is where an individual "with intent to commit a specific crime . . . . does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a).

2. The original statute was enacted on December 21, 1998, and was amended on June 18, 1999 to insert the language "or attempts to take" in Subsection (a). Also, in terms of grading of the offense, Subsection (b)(2) substituted "felony of the third degree" for "misdemeanor of the first degree."

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S.A. § 1921(c). "Penal statutes are to be strictly construed in favor of the accused." *Commonwealth v. Hansley*, 994 A.2d 1150, 1153 (Pa.Super.2010), citing *Commonwealth v. Kelley*, 569 Pa. 179, 801 A.2d 551, 554 (2002), and 1 Pa.C.S.A. § 1928(b)(1). Finally, the Crimes Code itself supplies guidance as to the construction of the provisions of the Code: "The provisions of this title shall be construed according to the fair import of their terms but when the language is susceptible of differing constructions it shall be interpreted to further the general purposes stated in this title and the special purposes of the particular provision involved." 18 Pa.C.S.A. § 105.

¶ 13 The Commonwealth posits that the trial court's interpretation of "moveable property" is too limited and should be interpreted to include "any part of the vehicle itself, contained on the outside of the vehicle, such as the grill, or even under the vehicle's hood." (Commonwealth brief at 15.) The Commonwealth suggests that the trial court's interpretation of the phrase "from a motor vehicle" is also too narrowly drawn as the phrase implies the vehicle in its entirety. (*Id.*) "The theft, or attempted theft, could originate from any component and/or compartment of the vehicle, not just the passenger areas or the trunk as the [trial] court suggested." (*Id.*)

¶ 14 Initially, we note that Section 3901 defines several terms that are universally applied to Chapter 39, which is entitled "Theft and Related Offenses." 18 Pa. C.S.A. § 3901.[3] For instance, this section defines the term "moveable property" in relevant part as "property the location of which can be changed ... 'Immovable property' is all other property." *Id.* The trial court held that the grill does not meet the definition of "moveable property" as it is affixed to the car. In granting appellee's motion for judgment of acquittal, the trial court explained:

> Although in certain circumstances car parts may be moveable property, we do not find that a part affixed to the car is movable property, since the car itself is movable property. We perceive the grill of the vehicle to be akin to a fixture with regard to real property. Nevertheless, we have no difficulty in determining that unlawfully removing parts from a car could result in a general charge of theft. However, this statute criminalizes theft *from* a motor vehicle, a distinction we believe with a difference.

**3.**

| | |
|---|---|
| 18 Pa.C.S.A. § 3921 | Theft by unlawful taking or disposition. |
| 18 Pa.C.S.A. § 3922 | Theft by deception. |
| 18 Pa.C.S.A. § 3923 | Theft by extortion. |
| 18 Pa.C.S.A. § 3924 | Theft of property lost, mislaid, or delivered by mistake. |
| 18 Pa.C.S.A. § 3925 | Receiving stolen property. |
| 18 Pa.C.S.A. § 3926 | Theft of services. |
| 18 Pa.C.S.A. § 3927 | Theft by failure to make required disposition of funds received. |
| 18 Pa.C.S.A. § 3928 | Unauthorized use of automobiles and other vehicles. |
| 18 Pa.C.S.A. § 3929 | Retail theft. |
| 18 Pa.C.S.A. § 3929.1 | Library theft. |
| 18 Pa.C.S.A. § 3930 | Theft of trade secrets. |
| 18 Pa.C.S.A. § 3931 | Theft of unpublished dramas and musical compositions. |
| 18 Pa.C.S.A. § 3932 | Theft of leased property. |
| 18 Pa.C.S.A. § 3934 | Theft from a motor vehicle. |

Trial court opinion, 5/17/10 at 8–9 (emphasis in original) (citations omitted). We agree with the trial court's rationale and see the logic in the analogy employed.

¶ 15 A "fixture" is an article in the nature of personal property which has been so annexed to the realty that it is regarded as part and parcel of the land. Black's Law Dictionary 574 (6th Ed.1991). In the case at hand, the undisputed evidence of record establishes that the grill was attached to the front of the vehicle and was not easily removable. Additionally, removal of the grill caused material damage to the vehicle, and testimony was presented regarding the cost of labor and parts involved in restoring the grill, as well as the battery, to the vehicle. While not perhaps essential to the operation of the vehicle, a grill was clearly so affixed to become "part and parcel" to the vehicle as a fixture is in the nature of personal property. We believe that the statute was meant to criminalize the taking of moveable property other than the car itself.

¶ 16 The Commonwealth claims the trial court misinterpreted "from a motor vehicle." The Commonwealth contends that the theft, or attempted theft, could originate from any component and/or compartment of the vehicle, not just the passenger areas or the trunk as the lower court suggested. (Commonwealth's brief at 15.) Having already determined that the statute does not apply, we respond only briefly to the Commonwealth's argument.

¶ 17 While we note that Section 3901 does not define the word "from", the plain language of this phrase does not preclude a presumptive application of the definition

suggested by appellee, and accepted by the trial court, which is that the statute was meant to protect theft of moveable property located from within the vehicle.[4] Absent pronouncement by the legislature or the Pennsylvania Supreme Court, we decline to apply the definition suggested by the Commonwealth. The express, unambiguous language of the statute indicates that it was intended to relate to moveable property taken "from" rather than "of" the vehicle. Again, the grill is a part of the vehicle itself and is an integral component of the vehicle. Therefore, taking, attempting to take, carrying away, or exercising unlawful control over the grill is not a taking "from the motor vehicle" but "of" the motor vehicle and is more akin to motor vehicle theft. Again, any ambiguity in a penal statute is construed in the light most favorable to the defendant. *Hansley,* 994 A.2d at 1153.

¶ 18 In summary, the most reasonable construction of Section 3934, given its express, unambiguous language, is that the grill of the vehicle does not fall within the definition of "moveable property" and was not taken "from the motor vehicle." Therefore, we find no error in the trial court's grant of judgment of acquittal.

¶ 19 We now turn to the Commonwealth's next two issues. The Commonwealth argues that the trial court went beyond the sole issue raised in the motion for judgment of acquittal. The Commonwealth argues that the trial court *sua sponte* decided when the Commonwealth may amend its information and in essence "created a local rule of criminal procedure." (Commonwealth's brief at 22.) We

---

4. Additionally, we note that the theft statute specifies other kinds of theft based on location of the property the defendant unlawfully exercises control over. For instance, "retail theft" involves the items in a retail mercantile establishment and "theft from a library" involves any "library or museum items" while still on the premises of a library or museum. 18 Pa.C.S.A. §§ 3929, 3929.1.

need not address the Commonwealth's two issues as we find that the trial court's commentary on the matter of amendment was mere dicta and was inconsequential to the court's legal analysis. As both the Commonwealth and appellee agree, at no time did the Commonwealth request to amend the criminal information once the trial commenced. Thus, until such time as the Commonwealth seeks to amend a criminal information and such request is denied, there is no matter before the court for disposition.

¶ 20 Order affirmed.