J. S20001/15

NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA   :     IN THE SUPERIOR COURT OF
                                          :           PENNSYLVANIA
                        v.                :
                                             :
LELAND DAVIS,                     :         No. 618 WDA 2013
                                             :
              Appellant       :


Appeal from the Judgment of Sentence, December 4, 2012,
in the Court of Common Pleas of Allegheny County
Criminal Division at No. CP-02-CR-0015949-2010


BEFORE: FORD ELLIOTT, P.J.E., SHOGAN AND WECHT, JJ.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:         **FILED MAY 11, 2015**

Leland Davis filed this timely appeal from the judgment of sentence entered on December 4, 2012, in the Court of Common Pleas of Allegheny County. We affirm.

The facts, as stated by the trial court, are as follows.

> On October 25, 2008, Tamir Thomas attended a birthday party for Jason Lewis at the Elks Club in McKeesport, Allegheny County. Appellant was also in the Elks Club that evening, wearing a black and white baseball cap. Parts of his movement inside the club were captured by video surveillance equipment. Shortly before 3:00 A.M., Thomas and Lewis left the Elks Club and began to walk down Walnut Street toward their car. At the same time, several police officers were patrolling the area for crowd control as patrons exited the Elks Club.
>
> As Thomas and Lewis were walking on Walnut Street toward 12th Street, Appellant approached Thomas from behind and shot him once in the back

of the head. Thomas immediately fell to the ground. Lewis did not see Appellant but instead fell to the ground for cover when he heard the gunshot. After a few seconds[,] Lewis tried to help Thomas stand up until he realized that Thomas had been shot in the head and was fatally wounded. Thomas was pronounced dead on the scene; he died as a result of a single penetrating gunshot wound to the head which caused immediate lethal injury to the left cerebellum and brain stem.

Several officers arrived on scene almost immediately after hearing the single gunshot. As Officer Jon Harrison was driving towards the scene on 12th Street, he saw Appellant running towards him with a gun in his hand and away from the area of the shooting. Appellant was wearing the same black and white baseball cap he was wearing in the Elks Club. Officer Harrison immediately exited his vehicle, drew his weapon, and ordered Appellant to stop. Appellant ignored him and ran down Tube Works Alley.

Officer Harrison pursued Appellant down the alley, continuously yelling for Appellant to stop. Appellant lost his footing and fell in front of a white vehicle, and Officer Harrison took cover behind the vehicle. As Officer Harrison approached Appellant, he came within ten feet of him and noticed that his firearm and hat were gone. Appellant continued to disobey Officer Harrison's orders to remain still. Appellant managed to regain his footing and ran away from Officer Harrison, this time climbing over a fence and ultimately escaping.

Police recovered a semiautomatic pistol ([.]40 caliber Smith & Wesson Glock) and a black and white hat from underneath the white vehicle that Appellant fell in front of during the foot chase. A jacket was also found where Appellant climbed over the fence. The recovered gun was test fired; the cartridge casings were compared to the cartridge casing recovered outside the Elks Club where Thomas was shot, and the bullet fragment found

within Thomas's brain was also compared to a test fired bullet. Based on this analysis, the crime lab determined that both the cartridge and the bullet fragment were discharged from that firearm. Based on the identification of Appellant from the surveillance video, a warrant was obtained to collect Appellant's DNA. DNA evidence recovered from the pistol and hat indicated that Appellant could not be excluded as a contributor.

Trial court opinion, 6/10/14 at 5-7 (citations to the record omitted).

Appellant was charged with one count of criminal homicide, 18 Pa.C.S.A. § 2501(a), for the shooting death of Thomas, one count of carrying a firearm without a license, 18 Pa.C.S.A. § 6106(a), and one count of person not to possess a firearm, 18 Pa.C.S.A. § 6105. An omnibus pre-trial motion was filed seeking suppression of Officer Harrison's identification and also to suppress the DNA and accompanying test results. Following a hearing on January 5, 2012, the motion was denied.

A jury trial commenced on August 30, 2012. At the close of the evidence, the defense moved for judgment of acquittal, which was denied by the court. On September 4, 2012, appellant was convicted of third degree murder and carrying a firearm without a license. Immediately thereafter, the Honorable Edward J. Borkowski found appellant guilty of persons not to possess a firearm. On December 4, 2012, appellant was sentenced to 20 to 40 years' imprisonment for third-degree murder and a consecutive term of 3 to 6 years for carrying a firearm without a license; no further penalty was imposed for the other firearms count. On December 6, 2012, a

post-sentence motion was filed challenging the weight of the evidence; the motion was denied on March 12, 2013.

A timely notice of appeal was filed. (Docket #20.) Appellant complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A., and the trial court has filed an opinion. Appellant presents the following claims for review:

[I]. Did the trial court err when it denied [appellant's] Motion to Suppress Officer Harrison's in[-]court identification when evidence of record demonstrated that Officer Harrison lacked the ability to make a[n] independent identification of [appellant] at the time of the incident here in question and only identified [appellant] when he saw him at a preliminary hearing dressed in a jail uniform?

[II.] Did the trial court err when it denied [appellant's] Motion to Suppress the search warrant for [appellant's] DNA where said search warrant was not based on probable cause and/or where said search warrant contained material misrepresentations of Jameelah Miller[1] thereby rendering it invalid?

[III.] Did the trial court err when it denied [appellant's] Motion for Judgment of Acquittal where the Commonwealth failed to prove beyond a reasonable doubt that [appellant] was the individual who shot the victim herein?

---

[1] Miller identified appellant after watching the video surveillance footage. Miller, who had known appellant for six or seven years, was introduced to appellant by appellant's brother. Miller had also dated one of appellant's friends.

Appellant's brief at 10.[2]

The first two issues concern the denial of appellant's motion to suppress. Our scope and standard of review from the denial of a suppression motion are well settled:

> An appellate court's standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. [Because] the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Reese*, 31 A.3d 708, 721 (Pa.Super. 2011) (citations omitted).

Appellant first argues that the trial court erred in denying his motion to suppress the identification of him by Officer Harrison. Appellant argues that due to the "brief nature of their encounter, the highly charged atmosphere immediately subsequent to a shooting incident, the lack of adequate lighting, and the period of time between the shooting and the highly suggestive in[-]court identification" Officer Harrison's identification was unreliable.

---

[2] Additional issues contained in his Rule 1925(b) statement have not been presented by appellant to our court in his brief; hence, we deem them to have been abandoned.

(Appellant's brief at 14.) While appellant concedes that the officer demonstrated certainty at the preliminary hearing when he identified appellant, he points out that this occurred when appellant was in a prison jumpsuit and in shackles, "leaving no possibility of mistaking who was in Court to answer the charge of criminal homicide." (*Id.* at 19-20.)

After a thorough review of the record, appellant's brief, the relevant law, and the well-reasoned opinion of the trial court, we hold this issue is without merit. The trial court's opinion correctly disposes of this suppression issue, and accordingly, we dispose of appellant's issue on the basis of that opinion. (*See* trial court opinion, 6/10/14 at 7-11.)[3]

Next, appellant claims the trial court erred in failing to grant his motion to suppress DNA evidence. Appellant argues the search warrant for the DNA was not supported by probable cause. (Appellant's brief at 22.)

---

[3] Regardless, the error was harmless. We agree with the Commonwealth that any error in the admission of the officer's identification would be harmless as expert testimony established that appellant was a major contributor of the DNA evidence detected on both the gun and the baseball cap found. Dr. Mark Perlin, an expert in the field of DNA analysis, concluded that a match between the DNA evidence collected from the firearm and appellant's DNA was 18.6 billion times more probable than a coincidental match to an unrelated African American. (Notes of testimony, 8/30/12-9/4/12 at 411.) Dr. Perlin also opined that the match between the DNA evidence collected from the baseball cap and appellant's DNA was 89 quadrillion times more probable than a coincidental match to an unrelated African American. (*Id.*) Additionally, Walter Lorenz, an expert in forensic biology and DNA analysis, determined that with regard to the baseball cap, the probability of randomly selecting another African American with the same DNA profile as appellant was 1 in 5.7 quadrillion. (*Id.* at 354-355.) Thus, even if the identification had been erroneously admitted, such an error would have been harmless given the DNA evidence.

Appellant also claims that the search warrant contained material misrepresentations by Miller.  (**Id.** at 23.)

At the outset, we agree with the trial court and the Commonwealth that appellant's argument concerning Miller is waived.  This claim was not raised in the motion to suppress or at the suppression hearing.  It is well settled that issues not raised in the trial court are waived for purposes of appeal.  Pa.R.A.P. Rule 302(a), 42 Pa.C.S.A.

We now turn to the claim concerning whether the warrant was supported by probable cause.  Our standard of review, however, does not look at each individual circumstance in determining if there is probable cause, rather we look to the circumstances as a whole.

> The standard for evaluating whether probable cause exists for the issuance of a search warrant is the totality of the circumstances test as set forth in **Illinois v. Gates**, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) and adopted by the [Pennsylvania] Supreme Court in **Commonwealth v. Gray**, 509 Pa. 476, 484, 503 A.2d 921, 925 (1985).  **Commonwealth v. Jones**, 542 Pa. 418, 424, 668 A.2d 114, 116 (1995).  A magistrate is to make a practical common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.  **Id.** at 424, 668 A.2d at 116-117 (citations omitted).

**Commonwealth v. Gindlesperger**, 706 A.2d 1216, 1219 (Pa.Super. 1997) (internal quotation marks omitted), **affirmed**, 743 A.2d 898 (Pa. 1999), **cert. denied**, **Pennsylvania v. Gindlesperger**, 533 U.S. 915 (2001).  In

reviewing the validity of a search warrant, the "reviewing court is limited to determining whether there is substantial evidence supporting the issuing authority's decision to approve the warrant." **Commonwealth v. Cramutola**, 676 A.2d 1214, 1216 (Pa.Super. 1996).

Reviewing the affidavit here, we find the trial court properly concluded there was a substantial basis for the issuing magistrate to conclude probable cause existed that appellant was connected to the murder of Thomas. The following circumstances were set forth in the affidavit: Thomas was shot in the back on October 25, 2008, at approximately 3:12 a.m. near the Elks Club; Officer Harrison heard the gunshot and immediately observed a black male holding a handgun running east on 12th Street; Officer Harrison ordered the man to stop and he did not comply; during the pursuit, a baseball cap fell off the suspect's head and the suspect dropped a Glock 23 .40 caliber S&W handgun; the suspect also stripped off the jacket he was wearing and it fell to the ground; the suspect evaded capture; Officer Harrison described the suspect as a light skinned black male approximately 6'0" tall with a thin build in his early 20s; the officer stated the suspect was wearing a dark coat and a striped baseball cap; the mobile crime unit collected the gun, hat, and jacket for DNA testing; a detective reviewed surveillance video from the Elks Club and observed an individual fitting Officer Harrison's description; on July 8, 2010, Miller viewed the video surveillance and identified the individual in the video wearing a baseball cap

with a large letter "B" as appellant; Miller based her identification on the fact that she had known appellant for six or seven years, knew appellant's brother, and had previously dated appellant's friend. (**See** Docket #6.) Clearly, the affidavit of probable cause was sufficient for a search warrant to issue. An officer chased a person observed running from the scene of Thomas' shooting. The officer observed this person carrying a gun which he discarded during the chase. The police were also able to obtain the ball cap the suspect was wearing as well as the coat he took off. The Commonwealth was able to obtain an identification of appellant via a surveillance tape from a person who had known appellant for approximately six or seven years. There was more than a fair probability that appellant's DNA could match that recovered from the gun and baseball hat collected from the scene. Contrary to appellant's assertions, the affidavit of probable cause contained detailed information which established a fair probability that the requested search would uncover DNA evidence resulting in a match with appellant's DNA.

Appellant's third claim concerns whether the trial court erred when it denied appellant's motion for judgment of acquittal. Appellant argues the Commonwealth failed to prove beyond a reasonable doubt that appellant was the individual who shot the victim. (Appellant's brief at 27.) Appellant states that the Commonwealth's evidence only demonstrates that Thomas was shot and killed by a firearm that had appellant's DNA on it but there was no evidence to indicate appellant fired the weapon. (**Id.** at 31.) Rather,

appellant argues the jury engaged in "speculation and conjecture" as they were presented with nothing more than circumstantial evidence when it concluded he acted with malice. (*Id.* at 28.) We disagree.

Our standard of review of appellant's claim that the court erred in denying his motion for judgment of acquittal is as follows:

> A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge.

*Commonwealth v. Foster*, 33 A.3d 632, 634-635 (Pa.Super. 2011).

Following our review of the record, appellant's brief, the relevant law, and the well-reasoned opinion of the trial court, we hold this issue is without merit. The Commonwealth presented sufficient evidence to establish appellant was the individual who shot the victim and possessed the firearm. The trial court's opinion correctly disposes of this issue, and accordingly, we dispose of appellant's issue on the basis of that opinion. (*See* trial court opinion, 6/10/14 at 15-20.)

Judgment of sentence affirmed.

J. S20001/15

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/11/2015

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA,     CRIMINAL DIVISION

APPELLEE                                                CC NO.: 201015949

V.

LELAND LAMAR DAVIS,

APPELLANT.

OPINION

BORKOWSKI, J.

PROCEDURAL HISTORY

Appellant, Leland Davis, was charged by criminal information (CC 201015949) with one count of criminal homicide,[1] one count of carrying a firearm without a license,[2] and one count of person not to possess a firearm.[3]

Appellant filed a motion to suppress on September 9, 2011, which was heard on January 5, 2012, and denied that same day.

_____

[1] 18 Pa. C.S. § 2501(a).
[2] 18 Pa. C.S. § 6106.
[3] 18 Pa. C.S. § 6105(a) and (c). This count was severed prior to trial and heard by the Trial Court in a nonjury fashion, simultaneously with the jury trial.

Appellant proceeded to a jury trial on August 30-September 4, 2012, at the conclusion of which Appellant was found guilty of third degree murder, carrying a firearm without a license, and person not to possess a firearm.

On December 4, 2012, Appellant was sentenced by the Trial Court to the following:

Count one: third degree murder – twenty to forty years incarceration;

Count two: carrying a firearm without a license – three to six years incarceration to be served consecutive to the period of incarceration imposed at count one;

Count three: person not to possess – no further penalty.

On December 6, 2012, Appellant filed a post sentence motion, which was denied on March 12, 2013.

On April 11, 2013, Appellant filed a notice of appeal. Following the grant of an extension of time, Appellant's Concise Statement was due January 1, 2014. Appellant filed his Concise Statement on January 9, 2014. The Trial Court will consider each issue raised by Appellant, although Appellant's Concise Statement was not timely filed.

## STATEMENT OF ERRORS ON APPEAL

Appellant's claims are set forth below exactly as Appellant presented them.

a. Did the trial court err when it denied Defendant's Motion to Suppress Officer Harrison's in court identification when

3

evidence of record demonstrated that Officer Harrison lacked the ability to make a independent identification of Defendant at the time of the incident here in question and only identified Defendant when he saw him at a preliminary hearing dressed in a jail uniform?

b. Did the trial court err when it denied Defendant's Motion to Suppress the search warrant for Defendant's DNA where said search warrant was not based on probable cause and/or where said search warrant contained material misrepresentations of Jameelah Miller thereby rendering it invalid?

c. Did the trial court abuse its discretion at sentencing when it sentenced Defendant to a period of incarceration of twenty (20) to forty (40) years incarceration and three (3) to six (6) years incarceration consecutively?

d. Did the trial court err when it denied Defendant's Motion for Judgment of Acquittal where the Commonwealth failed to prove beyond a reasonable doubt that Defendant was the individual who shot the victim herein?

e. Did the trial court err when it denied Defendant's Motion for Judgment of Acquittal where the Commonwealth failed to present sufficient evidence to prove that Defendant was either in possession of a firearm or that Defendant possessed a concealed firearm at the time of the incident here in question?

f. Did the trial court err when it denied Defendant's Motion for a New Trial where the jury's verdict of Murder in the Third Degree was based on such vague and speculative evidence so as to "shock the conscience"?

g. Did the trial court err when it denied Defendant's Motion for a New Trial where the jury and the trial court's verdicts convicted Defendant of firearms offenses was based on such vague and speculative evidence so as to "shock the conscience"?

h. Did the trial court err when it denied Defendant's Motion in Limine to exclude the DNA report and any conclusions therein where said reports exceeded the permissible purpose for which Pennsylvania Courts admit DNA evidence?

i. Did the trial court err when it denied trial counsel's request for a missing witness jury instruction relative to Jameelah Miller?

## FINDINGS OF FACT

On October 25, 2008, Tamir Thomas attended a birthday party for Jason Lewis at the Elks Club in McKeesport, Allegheny County. Appellant was also in the Elks Club that evening, wearing a black and white baseball cap. Parts of his movement inside the club were captured by video surveillance equipment. Shortly before 3:00 A.M., Thomas and Lewis left the Elks Club and began to walk down Walnut Street towards their car. (T.T. 50, 87-89, 91, 116, 273-279).[4] At the same time, several police officers were patrolling the area for crowd control as patrons exited the Elks Club. (T.T. 100-101, 104, 112-113).

As Thomas and Lewis were walking on Walnut Street towards 12th Street, Appellant approached Thomas from behind and shot him once in the back of the head. Thomas immediately fell to the ground. (T.T. 57, 59, 78, 91). Lewis did not see Appellant but instead fell to the ground for cover when he heard the gunshot. After a few seconds Lewis tried to help Thomas stand up until he realized that Thomas had been shot in the head and was fatally wounded. (T.T. 92). Thomas was pronounced dead on the scene; he died as a result of a single penetrating gunshot wound to the head which caused immediate lethal injury to the left cerebellum and brain stem. (T.T. 60, 78-79, 84).

---

[4] The designation "T.T." followed by numerals refers to Trial Transcript, August 30-September 4, 2012.

5

Several officers arrived on scene almost immediately after hearing the single gunshot. (T.T. 101, 105). As Officer Jon Harrison was driving towards the scene on 12th Street, he saw Appellant running towards him with a gun in his hand and away from the area of the shooting. Appellant was wearing the same black and white baseball cap he was wearing in the Elks Club. (T.T. 116-117). Officer Harrison immediately exited his vehicle, drew his weapon, and ordered Appellant to stop. Appellant ignored him and ran down Tube Works Alley. (T.T. 116, 118).

Officer Harrison pursued Appellant down the alley, continuously yelling for Appellant to stop. Appellant lost his footing and fell in front of a white vehicle, and Officer Harrison took cover behind the vehicle. (T.T. 118-120). As Officer Harrison approached Appellant, he came within ten feet of him and noticed that his firearm and hat were gone. Appellant continued to disobey Officer Harrison's orders to remain still. (T.T. 121-123). Appellant managed to regain his footing and ran away from Officer Harrison, this time climbing over a fence and ultimately escaping. (T.T. 124-126).

Police recovered a semiautomatic pistol (40 caliber Smith & Wesson Glock) and a black and white hat from underneath the white vehicle that Appellant fell in front of during the foot chase. A jacket was also found where Appellant climbed over the fence. (T.T. 53-54, 127, 192, 197). The recovered gun was test fired; the cartridge casings were compared to the cartridge casing recovered outside the Elks

Club where Thomas was shot, and the bullet fragment found within Thomas's brain was also compared to a test fired bullet. Based on this analysis, the crime lab determined that both the cartridge and the bullet fragment were discharged from that firearm. (T.T. 78, 200-201, 211-212). Based on the identification of Appellant from the surveillance video, a warrant was obtained to collect Appellant's DNA. DNA evidence recovered from the pistol and hat indicated that Appellant could not be excluded as a contributor. (T.T. 308, 314, 344-345, 348-358). Appellant was arrested and charged as noted hereinabove.

## DISCUSSION

### I.

Appellant alleges in his first claim that the Trial Court erred in denying Appellant's motion to suppress Officer Harrison's in court identification.

The Pennsylvania Supreme Court has enunciated the standard of review for a trial court's denial of a motion to suppress as follows:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct …. [W]e must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as a whole. Those properly supported facts are binding upon us and we may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Thompson*, 985 A.2d 928, 931 (Pa. 2009) (citations and quotations omitted). Specifically, in Appellant's motion to suppress he alleged the following:

> 28. Opportunity to view criminal at the time of the crime: Based on Detective Ruckel's affidavit of probable cause and his testimony at the preliminary hearing, Officer Harrison specifically said that he could not identify the actor because he did not get a good look at his facial features.
>
> 29. Accuracy of witness's prior identification: Officer Harrison described the suspect as a light-skinned black male. This description is inaccurate because Mr. Davis has a dark complexion.
>
> 30. Length of time between the crime and the identification: The crime occurred on October 25th 2008. The identification at the preliminary hearing occurred on December 3, 2010—over two years later. At no time during the two year interim did Officer Harrison ever inform a detective that he might be able to identify the suspect. At no time did Officer Harrison ever view a photo array or a line-up.
>
> 31. The record in this case establishes conclusively that Officer Harrison's in-court identification of Mr. Davis is based solely on his ability to see Mr. Davis immediately preceding the preliminary hearing, and not based on his ability to see the actor on the night of the shooting. Consequently, the in-court identification should be suppressed.

Omnibus Pretrial Motion, September 9, 2011 (emphasis in original).

In reviewing the propriety of identification testimony, the reviewing court must determine whether, under the totality of the circumstances, the identification is reliable. *Commonwealth v. Moye*, 836 A.2d 973, 976 (Pa. Super. 2003). When the allegedly unreliable identification occurs in a courtroom, the identification is reviewed as follows:

8

> The suggestive quality arising from a courtroom confrontation is created by the fact that the accused is clearly designated by his role in the proceeding as the suspected perpetrator prior to the identification. The type of inherent suggestiveness present in all one-to-one confrontations is present, and to some extent magnified, where the identification is made in open court.... Nevertheless, the key in determining the admissibility of such evidence is not simply the suggestiveness of the circumstances surrounding the identification but rather the likelihood of misidentification.

*Commonwealth v. Ferguson*, 475 A.2d 810, 815 (Pa. Super. 1984). Several factors to be considered include the witness's opportunity to view the perpetrator during the event, the witness's degree of attention during the event, the accuracy of prior descriptions of the perpetrator, the witness's level of certainty regarding the identification, and the time lapse between the event and the identification. *Commonwealth v. Brown*, 23 A.3d 544, 558 (Pa. Super. 2011).

At the conclusion of the suppression hearing, the Trial Court made the following findings of fact: (1) Officer Harrison had over eleven years of experience as a patrol officer; (2) during the early morning hours of October 25, 2008, Officer Harrison was patrolling the area surrounding the Elks Club; (3) Officer Harrison heard a single gunshot at 3:00 A.M.; (4) when Officer Harrison looked in the direction of the gunshot he saw a black male running away from the Elks Club and towards him with a gun in his hand; (5) Officer Harrison exited his vehicle and pursued the actor on foot down an alley off of 12th Street; (6) at this point Officer Harrison was too far from the actor to make out any identifying

9

characteristics besides his skin color; (7) Officer Harrison lost sight of the actor briefly before shouting verbal commands to stop, which were ignored; (8) Officer Harrison caught up to the actor when the actor lost his footing; (9) at that point Officer Harrison was approximately seven feet away from the actor in an alley well-lit by streetlights and lights on surrounding buildings; (10) Officer Harrison held the actor at gunpoint for fear of a gun fight given that he previously saw the actor holding a firearm; (11) while focusing on the actor's face, eyes, and hands, he noticed that the actor was no longer holding the firearm; (12) the actor again disregarded Officer Harrison's instructions to remain still; (13) the actor stood up abruptly and fled through adjacent yards and alleyways, preventing Officer Harrison from apprehending him that early morning; (14) Appellant's preliminary hearing was held on December 3, 2010; (15) upon seeing Appellant appear in the courtroom, Officer Harrison immediately recognized him as the actor he had chased on October 25, 2008; and (16) Officer Harrison immediately notified Detective Ruckel of his identification. (M.T. 35-40).[5]

Based on those findings of fact, the Trial Court found that an independent basis existed for Officer Harrison's identification of Appellant. Specifically, the Trial Court held that:

---

[5] The designation "M.T." followed by numerals refers to Suppression Motion Transcript, January 5, 2012.

10

Certainly his degree of attention at that time, given the circumstances where he believed that a shooting had occurred and he himself was potentially going to be involved in a gunfight or exchange of gunfire with a person armed with deadly force and level of certainty demonstrated at this time overrides the two other factors to the extent that the motion to suppress based on suggestiveness at the preliminary hearing or earlier description as to skin color are overridden by the opportunity and the focus of the officer at the time.

And there is certainly independent basis for the identification and the Court will deny that particular aspect of the motion.

(M.T. 40-41). The record supports the Trial Court's findings and conclusion that the identification had an independent basis and was reliable, and thus the Trial Court properly denied Appellant's motion to suppress and permitted the in-court identification. *See Commonwealth v. Richardson*, 500 A.2d 1200, 1201-1202 (Pa. Super. 1985) (identification of defendant after victim saw defendant in courtroom at preliminary hearing was reliable as victim had ample time to view defendant during attack).

Appellant's claim is without merit.

## II.

Appellant alleges in his second claim that the Trial Court erred in denying Appellant's motion to suppress the search warrant for Appellant's DNA based on the dual arguments that: (1) the search warrant was not based on probable cause;

11

and, (2) the search warrant contained material misrepresentations of Jameelah Miller. The first argument is without merit and the second argument is waived.[6]

An application for a warrant is supported by probable cause if based on the totality of the circumstances set forth in the affidavit, there is a fair probability that evidence of a crime will be found in a particular place. *Commonwealth v. Jones*, 988 A.2d 649, 655 (Pa. 2010). The standard of review is whether or not there is substantial evidence in the record to support the decision to issue the warrant. *Jones*, 988 A.2d at 655. At the conclusion of the suppression hearing, the Trial Court found that based on the totality of the circumstances, probable cause existed to support the issuance of the warrant, specifically stating:

> As to the warrant for the search for the DNA, the Court has reviewed the warrant. In light of the applicable law in terms of the totality of the circumstances stated in the warrant and the common sense approach that is granted to the [issuing authority] and review [by this] court and [in] this regard, [the] Court finds in this instance within its four corners that the author of the warrant [. . .] has sufficient detail and logical connection to the original crime, as well as the circumstances of the subsequent investigation that unfolded regarding their investigation, and the probable cause is certainly stated here.

---

[6] Appellant for the first time now argues on appeal that the search warrant contained material misrepresentations of Jameelah Miller. Appellant had previously alleged that the identification by Jameelah Miller was insufficient to support probable cause, but this specific argument regarding material misrepresentations was not raised in the motion to suppress, argued at the suppression hearing, or argued in the post sentence motion, and thus this argument is waived. *See Commonwealth v. Gordon*, 528 A.2d 631, 642 (Pa. Super. 1987) ("The raising of one particular theory in support of a suppression claim is not sufficient to preserve all other possible grounds for suppression of the same evidence").

(M.T. 41-42). The record supports the Trial Court's findings and conclusion that the warrant was supported by probable cause, and the Trial Court properly denied the motion to suppress. *See Commonwealth v. Madison*, 462 A.2d 485, 493 (Pa. 1983) (warrant authorizing search of person for blood, hair, and fingernail samples supported by probable cause based on finding of bloody handgun at the scene, indicia at the scene, and evidence that defendant had recently been in a fight).

Appellant's claim is without merit.

## III.

Appellant alleges in his third claim that the Trial Court abused its discretion in imposing consecutive sentences. This claim is without merit.

Generally, the decision of whether to run sentences concurrently or consecutively lies in the sound discretion of the sentencing court. *Commonwealth v. Hoag*, 665 A.2d 1212, 1214 (Pa. Super. 1995). A challenge to the decision to sentence consecutively rather than concurrently will only raise a substantial question where that decision "raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case." *Commonwealth v. Dodge*, 77 A.3d 1263, 1269 (Pa. Super. 2013). Appellant was convicted of third degree murder for shooting Tamir Thomas in the back of the head and was sentenced to an aggregate term of incarceration of twenty-three to forty six years. In so sentencing, the Trial Court considered several factors,

including: (1) the sentencing guidelines; (2) a presentence report; (3) statements made on Appellant's behalf by Appellant's mother, grandmother and Mr. Grayson; (4) eight letters outlining how the murder of Tamir Thomas has affected the lives of those individuals; and (5) offenses not accounted for in the prior record score. The Trial Court noted that Appellant has failed to avail himself of family sussport, and "has had the opportunity to be maintained in the community without success. He's repeatedly returned to a course of conduct of violence and endangerment of other persons." (S.T. 12-14). Appellant has not set forth a plausible argument that his aggregate sentence is *prima facie* excessive given the extensive and violent criminal conduct at issue, and thus Appellant has failed to raise a substantial question.[7] *See Commonwealth v. Pollard*, 832 A.2d 517, 526-527 (Pa. Super. 2003) (sentence reasonable and not excessive where judge considered presentence report, victim impact statements, and defendant's allocution before imposing consecutive sentences of twenty to forty years for third degree murder five to fifteen years for conspiracy, and one to two years for abuse of corpse).

Appellant's claim is without merit.

---

[7] Appellant was sentenced within the standard range of the guidelines and within the statutory limits on both the charge of third degree murder and carrying a firearm without a license. *Commonwealth v. Peay*, 806 A.2d 22, 29 (Pa. Super. 2002) (challenge to excessiveness will not raise a substantial question when sentenced within statutory limits).

IV.

Appellant alleges in his fourth claim that the Trial Court erred in denying Appellant's motion for judgment of acquittal based on the argument that the Commonwealth failed to prove beyond a reasonable doubt that Appellant was the person who shot the victim. This claim is without merit.

The standard of review for sufficiency of the evidence claims has been stated thusly:

> The standard we apply when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

*Commonwealth v. Gray*, 867 A.2d 560, 567 (Pa. Super. 2005).

With respect to identification testimony, the Superior Court has held as follows:

15

Evidence of identification need not be positive and certain to sustain a conviction. Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be used as other circumstances to establish the identity of a perpetrator. Out-of-court identifications are relevant to our review of sufficiency of the evidence claims, particularly when they are given without hesitation shortly after the crime while memories were fresh. Given additional evidentiary circumstances, any indefiniteness and uncertainty in the identification testimony goes to its weight.

*Commonwealth v. Orr*, 38 A.3d 868, 874 (Pa. Super. 2011) (citations and quotations omitted).

The evidence here regarding the identity of the shooter established that: (1) an individual with a black and white hat was seen inside the Elks Club on surveillance video on the night of the shooting; (2) Officer Harrison was patrolling the area of the Elks Club when he heard a single gunshot; (3) as he drove towards the scene of the shooting he immediately saw an individual running away from the scene on 12th Street with a firearm in his hand; (4) during a foot chase the individual discarded his hat and firearm; (5) the hat and firearm were recovered; (6) it was determined that the recovered firearm discharged the casing found near the Elks Club and discharged the bullet that became a fragment when it struck the skull of Tamir Thomas; (7) Officer Harrison identified Appellant as the individual he chased that evening and who discarded the weapon; and, (8) the DNA evidence from the hat and firearm, although not dispositive, strongly corroborated the

16

identification testimony of Officer Harrison. (T.T. 115-117, 127, 201, 211-212, 228-229, 344-345, 348-358).

As discussed hereinabove, the identification by Officer Harrison was properly admitted as evidence. *See supra*, p. 7-11. This evidence was sufficient to establish that Appellant was the individual who shot Tamir Thomas, and thus the Trial Court did not err in denying the motion for judgment of acquittal. *Commonwealth v. Collins*, 70 A.3d 1245, 1249-1250 (Pa. Super. 2013) (evidence sufficient to support first degree murder conviction where: (1) witnesses saw defendant and a co-defendant approaching scene of the crime prior to the shooting; (2) flee the scene immediately after the shooting; and (3) evidence showed that victim died from gunshot wounds from two separate guns); *Commonwealth v. Coleman*, 532 A.2d 477, 484 (Pa. Super. 1987) (evidence sufficient to establish each element of carrying a firearm without a license where two witnesses heard a gunshot and saw defendant holding a gun with smoke emitting from the barrel, and ballistics evidence was found at the scene, even though the gun was not recovered). *See also Commonwealth v. Trippett*, 932 A.2d 188, 198-199 (Pa. Super. 2007) (it is outside the purview of the Superior Court's review to rule on the credibility of witnesses).

Appellant's claim is without merit.

## V.

Appellant alleges in his fifth claim that the Trial Court erred in denying Appellant's motion for judgment of acquittal based on the argument that the Commonwealth failed to prove beyond a reasonable doubt either that Defendant was in possession of a firearm or possessed a concealed weapon at the time of the incident.

Appellant was convicted of carrying a firearm without a license and person not to possess a firearm. A violation of Section 6106 occurs where an individual "carries a firearm concealed on or about his person [. . .] without a valid and lawfully issued license" (18 Pa. C.S. § 6106); Section 6105 mandates that an individual who has been convicted of an enumerated offense within or without this Commonwealth "shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth" (18 Pa. C.S. § 6105).

The Trial Court has set forth a detailed recitation of facts hereinabove and incorporates that by reference for present purposes. Briefly stated, the record demonstrates that: (1) Officer Harrison was patrolling the area of the Elks Club when he heard a single gunshot; (2) as he drove towards the scene of the shooting he immediately saw an individual running away from the scene on 12th Street with a firearm in his hand; (3) during a foot chase the individual discarded his hat and

18

firearm; (4) the firearm was recovered; (5) it was determined that the recovered firearm discharged the casing found near the Elks Club and the bullet fragment lodged in the brain of Tamir Thomas; (6) Officer Harrison identified Appellant as the individual he chased that evening and who discarded the weapon; (7) Appellant did not have a license to carry a firearm; and (8) the parties stipulated in the simultaneous nonjury proceeding that Appellant had been adjudicated of aggravated assault and recklessly endangering another person in 2001. Most importantly, the jury viewed stills and portions of the Elks Club surveillance video of Appellant in the club. These allowed the jury to identify Appellant in the club with the black and white hat on and conclude that while Appellant was in the club the firearm was concealed, and Appellant only removed the firearm in order to shoot Tamir Thomas once Appellant followed him outside the club. (T.T. 115-117, 127, 201, 211-212, 240, 273-279, 434).

This evidence was sufficient to establish that Appellant was carrying a concealed firearm without a license and while prohibited from possessing a firearm, and thus the Trial Court did not err in denying the motion for judgment of acquittal. *See Commonwealth v. Lopez*, 57 A.3d 74, 80 (Pa. Super. 2012) (evidence sufficient to sustain conviction for carrying a firearm without a license where witnesses viewed defendant walking, and then viewed defendant with a gun, and

19

ballistics evidence found in defendant's bedroom matched cartridge casings recovered at the scene).

Appellant's claim is without merit.

## VI.

Appellant alleges in his sixth claim that the Trial Court erred in denying Appellant's motion for new trial based on the argument that his conviction of third degree murder is against the weight of the evidence. Specifically, Appellant alleged in his post sentence motion that the verdict of third degree murder was against the weight of the evidence based on arguments attacking: (1) the credibility of Officer Harrison's identification; (2) the reliability of the expert opinions regarding DNA; and (3) the Commonwealth's failure to call Jameelah Miller as a witness. Post Sentence Motion, December 6, 2012. This claim is without merit.

With respect to a weight challenge based on the credibility of witness testimony, the Superior Court has held:

> When the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Trippett*, 932 A.2d at 198 (citations and quotations omitted). An abuse of discretion will only be found where the decision of the trial court is "manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will." *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013). Further, the fact finder is free to believe all, part, or none of the testimony offered in assessing the credibility of witnesses. *Commonwealth v. DeJesus*, 860 A.2d 102, 107 (Pa. 2004). The Trial Court has detailed the law surrounding identification testimony hereinabove and incorporates that by reference for present purposes. *See supra* p. 16.

The Trial Court has also detailed the particulars of Officer Harrison's testimony hereinabove and incorporates that by reference for present purposes. *See supra* pp. 7-11, 16-17. That recitation and the record otherwise clearly established that Appellant was the individual who shot and killed Tamir Thomas. *Collins*, 70 A.3d at 1251 (though circumstantial, verdict not against the weight of the evidence where defense vigorously attacked credibility of witnesses but did not present independent exculpatory evidence nor so undermine Commonwealth evidence as to render it unbelievable).

Appellant's claim is without merit.

VII.

Appellant alleges in his seventh claim that the Trial Court erred in denying Appellant's motion for new trial based on the argument that his firearms convictions were against the weight of the evidence. The Trial Court has detailed that part of the evidence that supported a conviction for carrying a firearm without a license and person not to possess hereinabove. *See supra* p. 19. That recitation and the record otherwise clearly established that Appellant concealed a firearm while he was not properly licensed and was in fact prohibited from obtaining such a license. *See Lopez*, 57 A.3d at 80-81 (attacks on credibility challenge the weight of the evidence, and the appellate court found that if preserved, the conviction for carrying a firearm without a license was not against the weight of the evidence where the jury found the Commonwealth witnesses credible despite attempts to impeach). Appellant's claim is without merit.

VIII.

Appellant alleges in his eighth claim that the Trial Court erred in denying his motion in limine to exclude the conclusions stated in Dr. Mark Perlin's supplemental report regarding the DNA evidence introduced at trial, specifically the comparisons between minor contributors. Appellant bases this argument on the claim that Dr. Perlin's conclusion exceeds the purpose for which Pennsylvania

Courts have accepted statistical analysis of DNA evidence.[8] This claim is without merit.

The admissibility of expert reports is within the sound discretion of the trial court, and the trial court's determination will not be reversed absent an abuse of discretion or an error of law. *Commonwealth v. Foley*, 38 A.3d 882, 887-888 (Pa. Super. 2012). Under the *Frye* test:[9]

> [N]ovel scientific evidence is admissible if the methodology that underlies the evidence has general acceptance in the relevant scientific community. The *Frye* test is a two-step process. First, the party opposing the evidence must show that the scientific evidence is novel by demonstrating that there is a legitimate dispute regarding the reliability of the expert's conclusions. If the moving party has identified novel scientific evidence, then the proponent of the scientific evidence must show that the expert's methodology has general acceptance in the relevant scientific community despite the legitimate dispute.

*Foley*, 38 A.3d at 888 (citations and quotations omitted).

Here, a hearing was held before the Honorable Beth A. Lazzara on August 16, 2012.[10] Appellant's argument was premised on the assertion that the conclusion

---

[8] The challenged conclusion is recited in Paragraph 5 of Appellant's pretrial motion:

> Based on these results, there is no statistical support for a match between the minor contributors of the handgun (item 10A1) and the minor contributors of the baseball cap swabbing (Item 12B). Therefore, there is no indication that any person, other than Leland Davis, contributed their DNA to both items of evidence (Item 10A1, Item 12B).

Amended Omnibus Pretrial Motion is [sic] Limine, August 2, 2012.

[9] *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923).

[10] The case was originally assigned to the Honorable Beth A. Lazzara. The case was transferred to this Trial Court for the jury trial.

23

was inadmissible because such comparisons had not been used in a court before. However, the Superior Court has held that something is not novel simply because it has not been used in court before; rather, "novelty" will only be found where there is a dispute among scientists. *Foley*, 38 A.3d at 889. As Appellant failed to establish the existence of a legitimate dispute over the contested conclusion, the conclusion did not constitute novel scientific evidence. *Foley*, 38 A.3d at 890. Thus, Judge Lazzara did not abuse her discretion when she found the evidence admissible and denied Appellant's motion in limine. *See Foley*, 38 A.3d at 890 ("[a]bsent a legitimate dispute, there is no reason to impede admissibility of evidence that will aid the trier of fact in the search for truth").

Appellant's claim is without merit.

## IX.

Appellant alleges in his final claim that the Trial Court erred in denying counsel's request for a missing witness jury instruction relative to Jameelah Miller. This claim is without merit.

The Pennsylvania Supreme Court has stated the rule for preservation of objections to jury instructions as follows:

> [U]nder Criminal Procedure Rules 603 and 647(B), the mere submission and subsequent denial of proposed points for charge that are inconsistent with or omitted from the instructions actually given will not suffice to preserve an issue, absent a specific objection or exception to the charge of the trial court's ruling respecting the points.

24

*Commonwealth v. Pressley*, 887 A.2d 220, 225 (2005). Here, Appellant failed to object following the jury instructions regarding the Court's decision not to provide Proposed Jury Instruction 3.21B. (T.T. 905-906). *See Commonwealth v. Marquez*, 980 A.2d 145, 150 (Pa. Super. 2009) (issue not preserved for appellate review where defendant failed to raise objection after the jury was charged). Appellant's claim is therefore waived.

Even if not waived, Appellant's claim is without merit. The Pennsylvania Superior Court has stated that "[t]he relevant inquiry for this Court when reviewing a trial court's failure to give a jury instruction is whether such charge was warranted by the evidence in the case." *Commonwealth v. Baker*, 963 A.2d 495, 506 (Pa. Super. 2008). In order for the missing witness instruction to be properly given, "the witness must be available only to the Commonwealth and no other exceptions must apply. In order to determine whether a witness was available to a party, the trial court must ascertain whether the witness was peculiarly within the knowledge and reach of one party." *Commonwealth v. Evans*, 664 A.2d 570, 574 (Pa. Super. 1995) (citations and quotations omitted). Here, the record established that the Trial Court properly held that the instruction was not proper because there was no evidence that Jameelah Miller was only available to the Commonwealth. (T.T. 515). Thus, the Trial Court properly held that the instruction should not be given, and Appellant's claim is without merit. *Commonwealth v. Nesbitt*, 419 A.2d

25

64, 68 (Pa. Super. 1980) (where there is no evidence that the nontestifying witness is within the particular control of the Commonwealth, the trial court did not err in refusing to give missing witness instruction).

Appellant's claim is without merit.

## CONCLUSION

Based upon the foregoing, the judgment of sentence imposed by this Court should be affirmed.

By the Court,

DATE: _JUNE 10, 2014_          _____ J.

Edward J. Borkowski

26